STEPHANIE B. CHURCH, as Committee of the Person and Property of JEFFERSON CHURCH, an Incompetent, Respondent, *v.* HENRY EDWARD DREIER and Another, Appellants.

Second Department, June 8, 1923.

Contracts — construction — contract to give percentage of corporate stock after owner of all stock in corporation had received profits from corporation equal to original investment — owner could not defeat contract by failing to have profits paid over to himself — extra allowance denied — case neither difficult nor extraordinary.

In an action on a contract providing that the owner of all the stock of the corporation would transfer a certain percentage thereof to the other party to the contract who was to remain in the employ of the corporation, as soon as the profits paid by the corporation to the owner equalled the owner's original investment, *held,* that the owner could not defeat the contract by failing to have the profits paid over to himself.

The plaintiff's motion for an extra allowance is denied, for the case is neither difficult nor extraordinary.

APPEAL by the defendants, Henry Edward Dreier and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 28th day of December, 1922, upon the decision of the court rendered after a trial at the Kings Special Term.

*George D. Beattys* [*Alfred G. Reeves* with him on the brief], for the appellants.

*Edwin T. Rice,* for the respondent.

Judgment unanimously affirmed, with costs, on the opinion of Mr. Justice CROPSEY at Special Term.

Present — KELLY, P. J., RICH, JAYCOX, MANNING and KAPPER, JJ.

The following is the opinion of the court below:

CROPSEY, J.:

At the close of the trial it was determined that the incompetent was not competent to enter into a contract at the time the settlement and adjustment was made between him and the defendant Dreier, although it was not found that defendant Dreier was then aware of such incompetency. It follows that the transaction

then had must be set aside. The question remains as to whether the plaintiff must return any or all of the stock which the incompetent received upon that adjustment. That depends upon whether the incompetent was entitled to receive the stock under his contract with the defendant Dreier. Of course, if he was not, the stock must be returned. The defendants concede that the incompetent was entitled to some of the shares, but contend that he was entitled only to eighteen and three-tenths shares instead of twenty-five. On the other hand, plaintiff contends that the incompetent was entitled not only to the twenty-five shares he received, but to twelve additional shares, making thirty-seven in all. The number of shares to which the incompetent was entitled depends upon the construction to be placed upon the agreement previously made between him and the defendant Dreier and the proof of what transpired thereunder. Under the agreement, all the profits from the business of the defendant company, after payment of all expenses, were to be " paid over " to defendant Dreier " from time to time as may be ordered and directed by the board of directors of said company until the entire amount which the said Dreier has paid for the said business has been received by him, namely $17,500; " and Dreier agreed to credit the incompetent " with one-half of all the above-mentioned net profits of said business " until the said profits so credited to the incompetent amount to $8,633⅓, and for the moneys so credited the incompetent was to receive stock in the company at the rate of $233⅓ per share; the agreement further provided that at its consummation the incompetent might own thirty-seven seventy-fifths of the entire capital stock of the business of the company, and the defendant Dreier thirty-eight seventy-fifths thereof. The incompetent agreed with Dreier that he would remain in the employ of the company and give his undivided time and attention to it for a period of five years or until Dreier had received back his entire investment. It is further provided that until Dreier had received back his entire investment and until the profits had been applied so as to enable the incompetent to own stock of the company to the amount of thirty-seven seventy-fifths of the entire capitalization no dividends whatever should be paid or in any way credited on any of the stock, and that the amount of the capital stock was to remain as it was, namely, seventy-five shares of the par value of $100 each. The agreement further provided that in case of the death or disability of the incompetent prior to the time that Dreier " receives back the full amount of his original investment " the estate of the incompetent was to receive, besides the shares already earned and held, only such amount of shares as could be purchased

at the price mentioned by the amount of credited profits as therein stated, which shall have actually accrued and remain due the incompetent and unpaid in stock at the time of his death or disability, as the value of his experience and knowledge, in consideration of which the agreement was partly entered into, was stated to cease at his death or disability. Concededly, the company earned much more than enough profits to entitle the incompetent to receive the entire thirty-seven shares of stock long before the date of the attempted settlement. But defendants contend that because these profits were not paid to Dreier the incompetent did not become entitled to his share of them. Some of the profits remained in the business and were used to increase the assets of the corporation. Defendant Dreier had entire control of the corporation, as he owned all of the stock and could have made such disposition of the profits as would have been proper to have carried out his agreement with the incompetent, and should have done so. (See *Stem* v. *Warren,* 185 App. Div. 823, 830; 227 N. Y. 538.) Under defendants' claim, if Dreier saw fit to do so, he need not have taken any profits, and thus the incompetent would never have become entitled to any of the stock. This plainly was not the intention of the parties, as shown by the agreement. But Dreier did receive some payments on account of his original investment, and in addition the sum of $16,000 was voted by the directors of the company to be raised upon its note and paid out of the profits to the stockholders. This action was taken some years before the attempted settlement with the incompetent, and the company's note for that amount was issued and was accepted by defendant Dreier. The resolution provided that the note should be used to raise funds sufficient to make the payment, but apparently Dreier accepted the note instead of the cash. It was the same, however, as though he had received the money, and that amount, together with what he had previously received, amounted to more than the sum of his original investment. Thereupon the incompetent became entitled to thirty-seven shares of the company's stock. The plaintiff is, therefore, entitled to retain the twenty-five shares received by the incompetent and also to receive from defendant Dreier twelve additional shares, with the dividends allowed thereon. Judgment is granted to the plaintiff, with costs against defendant Dreier. The plaintiff's motion for an extra allowance is denied. The case was neither difficult nor extraordinary within the meaning of the term as applied to the granting of allowances. The decision and judgment have been signed and the requests of the defendants passed upon.